**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 20th day of August, 2018.**



_____
Robert D. Berger
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

| | |
|---|---|
| **Generation Resources Holding Company LLC,** <br> Debtor. | Case No. 08-20957-7 |

| | |
|---|---|
| **Eric C. Rajala, Chapter 7 Trustee,** <br> Plaintiff, <br> vs. | Adv. No. 18-6016 |
| **Husch Blackwell, LLP,** <br> Defendant. | |

| | |
|---|---|
| **Eric C. Rajala, Chapter 7 Trustee,** <br> Plaintiff, <br> vs. | Adv. No. 18-6020 |
| **Spencer Fane, LLP,** <br> Defendant. | |

**Memorandum Opinion and Order Denying
Defendants' Motions for a More Definite Statement**

The Debtor in the bankruptcy matter underlying this case, Generation Resources Holding

*Gen Resources Rajala v. Law Firms Order.wpd*

Company ("GRHC"), has been involved in litigation concerning its interests in Pennsylvania wind farm projects for nearly ten years: loan default, bankruptcy, litigation over payment on the underlying projects, fraudulent transfer litigation, etc. It is no surprise, then, that the latest litigation involves law firms themselves: defendants Husch Blackwell, LLP and Spencer Fane, LLP. The Trustee of Debtor's bankruptcy estate has filed a separate complaint against each law firm under 11 U.S.C. § 550,[1] seeking disgorgement of certain funds transferred to the law firms. Because the allegations and issues involving each law firm are the same, the Court deals with them jointly.

Despite the Trustee's 32-page complaint against each of them, detailing the history of this Debtor and what the Trustee alleges supports an underlying fraudulent transfer claim and the law firms' subsequent receipt of funds, the law firms have each filed a motion for more definite statement under Federal Rule of Civil Procedure 12(e). The Court finds that the law firms' efforts to narrow and define the Trustee's claim against them are more suited to discovery than their current motions and, as a result, denies each motion.

**I.      Background**

The Trustee alleges the following in his complaints. Debtor GRHC was formed in 2002 to develop wind power projects in western Pennsylvania. GRHC developed three projects: Stonycreek, Forward, and Lookout. The Stonycreek project was deemed non-economical and abandoned, but the Forward and Lookout projects moved ahead. In February 2002, GRHC submitted a $1 million loan application to two charitable foundations in Pennsylvania for the purpose of developing these projects and represented that GRHC would reimburse the

---

[1] Unless otherwise indicated, all additional statutory references will be to the Bankruptcy Code, Title 11 of the United States Code.

*Gen Resources Rajala v. Law Firms Order.wpd*

foundations in full; that all property agreements and easements would be handled by GRHC; that the foundations would be informed of material changes within 14 days; and that GRHC's shareholders would receive no distributions until the loan was repaid. The February 2002 loan application was approved by the foundations, and the parties entered into an agreement for a $1 million loan. The proceeds were to be used under GRHC's "reasonable discretion" to pay the cost of developing the wind power projects. Later in 2002, a second $1 million loan was approved for the same purpose. The 2002 loans were unsecured general obligations of GRHC, and the Trustee alleges the foundations could enforce the loans by executing on any GRHC asset.

In February 2004, GRHC began discussions with Edison Capital, an affiliate of the utility conglomerate Edison International, about further developing the wind power projects and ultimately selling those projects to Edison. GRHC learned that Edison required each project be a separate subsidiary of GRHC so that each could be sold as an individual entity when the time came and leases and permits would not have to be rewritten. GRHC then created Forward Windpower LLC (formed in August 2004) to develop the Forward project and Lookout Windpower LLC (formed in April 2005) to develop the Lookout project. The operating agreements of these LLCs stated that the purpose of the LLC was to manage, develop, and/or operate each asset.

Three married couples, the Gardners, the Stevenses, and the Ansels, each owned and controlled a one-third interest in GRHC. The husbands in those couples had each been executives at Black & Veatch, an engineering, procurement, and construction company, until leaving that employment in June 2004 under circumstances the Trustee alleges included

suspicions of self-dealing. The Trustee claims that the men used their executive positions at Black & Veatch to convince Black & Veatch to provide engineering services needed to develop the wind farms, but to wait for payment for those services until the projects were sold. At the time the men left Black & Veatch, GRHC executed a promissory note for $2.2 million to represent the amount owed to Black & Veatch by GRHC. This note was an unsecured general obligation of GRHC. At about the same time, mid-2004, GRHC obtained another $1 million loan from the charitable foundations.

In late 2004 and early 2005, GRHC progressed with the development of the Lookout project, mapping the transmission lines, leasing land, and hiring persons to clear the land. In April 2005, GRHC began active negotiations with Edison to sell the wind power projects to Edison, with the parties exchanging draft letters of intent. By May 2005, the letter of intent between Edison and GRHC had become a memorandum of understanding, with the parties revising their draft more than a dozen times.

With both the charitable foundations and Black & Veatch being substantial creditors of GRHC, Edison required that those parties agree to the terms of the memorandum of understanding before Edison would move forward with the deal. As a result, GRHC contacted the foundations and Black & Veatch to obtain approval and told them that their debts would be repaid before anyone else's. In July 2005, a new promissory note was executed with Black & Veatch to aid moving the memorandum of understanding forward. In July 2005, the Edison and GRHC memorandum of understanding became fully executed. It stated that GRHC was the sole developer and that "Stonycreek WindPower, Forward WindPower and Lookout WindPower" were affiliates of GRHC. GRHC circulated the final memorandum of understanding to the

*Gen Resources Rajala v. Law Firms Order.wpd*

charitable foundations in October 2005 and emailed announcements of the sale of the wind farms to various industry groups.

In August 2005, GRHC and Edison began drafting a development agreement. Throughout it stated that GRHC was the owner and developer of the wind farm projects. The development agreement was circulated to the charitable foundations, and when Edison required an extension of the loan maturity date from those foundations, GRHC requested the extension and again promised that the foundation loans would be paid back before any profit would be taken. In November 2005, GRHC represented to the charitable foundations that their loans could not be repaid unless the Edison deal went forward. The individual owners of GRHC represented to Edison that the debts to the charitable foundations and Black & Veatch would be paid in full as part of the parties' deal.

Shortly thereafter, at the end of November 2005, GRHC became unable to pay its debts as they became due. At the same time, the individual owners of GRHC then created two additional companies, Lookout Windpower Holding Company, LLC and Forward Windpower Holding Company, LLC. The individual owners were the sole owners and in complete control of these holding companies, but did not disclose this to the charitable foundations or Black & Veatch.

On December 1, 2005, the individual owners then circulated revised development agreements amongst themselves. The name of the developer was changed from GRHC to the holding companies they had just created. Despite this, the individual owners represented publicly and to the charitable foundations that GRHC was the developer and the terms of the memorandum of understanding were being followed, even going so far as to purposefully

*Gen Resources Rajala v. Law Firms Order.wpd*

mislead the charitable foundations. In early 2006, without being informed that the memorandum of understanding terms had been altered, the charitable foundations then extended the maturity date of their loans. Likewise, the individual owners induced Black & Veatch to further extend the dues dates of the GRHC debt. In February 2006, the restructured deal with Edison closed. Edison then took over all development costs on the projects.

GRHC did not receive any consideration or value for the transfer to the holding companies of GRHC's right to be paid sunk costs and developer fees. In fact, the transfer caused GRHC to become insolvent. The individual owners knew GRHC would need to file bankruptcy eventually, but delayed a bankruptcy filing as long as possible so they could be paid the final installment on the deal with Edison before a bankruptcy trustee became involved.

In the spring of 2007, the wind farm projects were ready for construction. The individual owners reached an agreement with Edison that Edison should pay $13 million for the projects. The draft agreement required warranties that the charitable foundations and Black & Veatch would be paid in full, but the individual owners of GRHC persuaded Edison to remove that language. The agreement reached by GRHC ensured that the holding companies would be paid by Edison, and GRHC received no value for this agreement. Ultimately, the agreements were finalized in late March 2007. Payment by Edison on the Lookout project was to be made within five business days of the wind farm projects reaching commercial operation.

At the end of December 2007, the loans to the charitable foundations became due, and GRHC defaulted. In March 2008, the charitable foundations sued GRHC, and judgment was entered against GRHC for $2.625 million shortly thereafter. In April 2008, GRHC filed its voluntary Chapter 7 petition for bankruptcy, and the discovery the charitable foundations were

*Gen Resources Rajala v. Law Firms Order.wpd*

undertaking to collect on their judgment was halted. GRHC's bankruptcy schedules and statement of financial affairs did not disclose any interest in the wind power projects that GRHC had developed. At the meeting of creditors for GRHC, one of the Defendant law firms—Husch Blackwell—appeared on behalf of Black & Veatch. At that hearing, one of the individual owners of GRHC, Robert Gardner, refused to answer questions about the wind power projects or the holding companies.

In November 2008, the holding company associated with the Lookout wind power project claimed that the project was complete and demanded final payment from Edison. Edison acknowledged commercial operation, but stated it was reducing the final installment payment by nearly half due to construction delays and increased costs. The individual owners of GRHC contacted Husch Blackwell about representing them in a lawsuit against Edison on a contingent fee basis. The Trustee alleges a conflict was created by this representation of both Black & Veatch and the GRHC members. No engagement letter was entered. The only fees paid to Husch Blackwell were from the sale proceeds of the Lookout wind power project.

One month later, in December 2008, Husch Blackwell filed a lawsuit on behalf of the Lookout holding company against Edison for the final installment payment. The lawsuit was ultimately dismissed on jurisdictional grounds. The Trustee then sent Husch Blackwell written notice that the funds claimed in the lawsuit from Edison belonged to the Trustee as part of Debtor GRHC's bankruptcy estate. A week after receiving that notice from the Trustee, Husch Blackwell refiled its suit in the correct district to solve the jurisdictional issues. The Trustee responded, but this time not with a letter—the Trustee filed his own lawsuit against the individual owners of GRHC, the Lookout holding company, and Edison, among others, and

*Gen Resources Rajala v. Law Firms Order.wpd*

again claimed the final installment payment for the Lookout project was bankruptcy estate property of GRHC.

The parties engaged in various litigation maneuvers for nearly the next two years. The Spencer Fane law firm also entered the litigation as attorneys for the holding companies and the individual owners. Ultimately, in the litigation between Edison and the Lookout holding company, a federal district court entered judgment against Edison for $9 million and then also ruled that the monetary judgment should "be transferred to the District of Kansas Bankruptcy Court" where GRHC's bankruptcy was pending, "subject to a determination . . . whether or not these funds are rightfully part of the bankruptcy estate."[2] The issues of enforcement of the judgment and whether the judgment was part of the bankruptcy estate were expressly reserved for the bankruptcy court. Any funds paid in satisfaction of the judgment were to be placed in escrow. The $9 million was deposited into the bankruptcy court's registry.

More machinations of the parties' litigation followed. The property of the estate issue was withdrawn from the bankruptcy court to the federal district court. Husch Blackwell filed a lien statement claiming $1,875,000 for its professional services rendered. After appropriate consideration, the district court ordered distribution of the $9 million and noted that if the Trustee later proved a fraudulent transfer of the Lookout development opportunity, then the Trustee could recover funds at that point. The Trustee alleges the law firms then both began working out a plan to hinder the Trustee's attempts to recover the proceeds.

Ultimately, the Lookout holding company's portion of the funds, $6,706,086.35, was deposited in their account in May 2012. Within a couple of weeks, the individual owners

---

[2] Adv. No. 18-6016, Doc. 1 (Complaint), ¶ 120.

- 8 -

*Gen Resources Rajala v. Law Firms Order.wpd*

Case 18-06016   Doc# 15   Filed 08/20/18   Page 8 of 19

transferred the entirety of the funds and closed their account. But that was not the end. The Trustee filed a motion to enjoin dissipation of the funds and appealed the district court's decision. In response, more transfers occurred: this time, a $150,000 cashier's check was given to the Spencer Fane law firm, and the majority of the funds were wired to the Cayman Islands. But yet again, this was not the end. Of the sale proceeds allegedly hidden in the Cayman Islands, $875,000 was transferred to Husch Blackwell and $150,000 was transferred to Spencer Fane. Almost $700,000 of the funds are still unaccounted for. An additional $468,750 was transferred to Husch Blackwell via check from a separate account. An additional $52,600 was transferred to Spencer Fane in three separate transfers.

Nearly five years passed with the parties in litigation. Judgment was entered, appeals were taken, claims were remanded. In March 2017, the Trustee settled his claims in the lawsuit seeking to define the property of the estate. The settlement was among the Trustee and the individuals associated with GRHC. Neither of the holding companies were parties to the settlement, nor were the law firms parties to the settlement agreement. The Trustee did note in the settlement agreement, however, that he planned to pursue claims against both law firms for the amount of the Lookout sales proceeds the law firms received from the holding company.

Over objections, the settlement was ultimately approved. In May 2017, the district court entered a consent order and judgment avoiding the transfer of the Lookout project from GRHC to the Lookout holding company and directing the Trustee to recover the value of the transfer in the amount of $9,941,448. The order and judgment also avoided the transfer of the Forward project from GRHC to the Forward holding company and directed the Trustee to recover the value of the transfer in the amount of $1,493,000.

The Trustee alleges that the Lookout and Forward holding companies were really shell companies and that the individual owners of GRHC manipulated their companies so that GRHC would be liable for all the debt incurred to develop the Lookout and Forward wind power projects, but the shell companies would be paid all proceeds from the anticipated sales of those wind power projects. The Trustee alleges that the individuals fraudulently transferred GRHC's interest in each wind power project to the holding companies and, as a result, the holding companies received millions of dollars for the sale of those projects. The Trustee alleges that this was done with the actual intent to hinder, delay, and defraud GRHC, Black & Veatch, and the charitable foundations from collecting any part of the sale proceeds. The transfer of funds to the Cayman Islands was a continuation of that fraud.

The Trustee alleges that Husch Blackwell is in possession of at least $1,343,750 and Spencer Fane is in possession of at least $722,566 of the money paid by Edison for the purchase of the Lookout wind farm. The Trustee seeks to recover those funds on behalf of GRHC's bankruptcy estate. The Trustee claims the law firms' efforts in representing the holding companies did not increase the amount Edison offered to pay in 2009 and the law firms' efforts were of no value to GRHC or the holding companies. Finally, the Trustee alleges that GRHC and its creditors have been damaged by the law firms' actions. The Trustee explicitly states a claim under § 550(a) for recovery of money, but then also states that if the judgment avoiding the transfer from GRHC to the holding companies must be relitigated, then the Trustee seeks a judgment avoiding that transfer under §§ 544 and 548.

*Gen Resources Rajala v. Law Firms Order.wpd*

II.   Analysis

   A.   Legal Standard for Assessing Motions for More Definitive Statements

A party may move for a more definite statement under Federal Rule of Civil Procedure 12(e).[3] Rule 12(e) states:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Rule 12(e) motions are properly granted when a party is unable to determine the issues of the claim and how to respond to them.[4] The reasoning behind a 12(e) motion is that a pleading must give the defendant sufficient notice of the claim and grounds on which it rests so the defending party can prepare an adequate answer.[5] "A motion for a more definite statement should not be granted merely because the pleading lacks detail; rather, the standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or admission."[6] Rule 12(e) motions are generally not favored because of the minimal pleading requirements of the Federal Rules; parties should use the discovery process to obtain additional details with respect to the claims.[7] "Rule 12(e) is designed to strike at unintelligible

---

[3] Rule 12(e) is applicable in bankruptcy adversary proceedings via Federal Rule of Bankruptcy Procedure 7012(b).
[4] *Resolution Tr. Corp. v. Thomas*, 837 F. Supp. 354, 356 (D. Kan. 1993).
[5] *State Bank & Tr. Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 292 (Bankr. S.D. Ohio 2007).
[6] *In re Spencer*, No. 12-20854, 2014 WL 2696715 at *1 (Bankr. D. Kan. June 11, 2014), quoting *Creamer v. Ellis Ct. Sheriff Dep't.*, No. 08-4126-JAR, 2009 WL 484491, at *1 (D. Kan. Feb. 26, 2009).
[7] *Id.*

*Gen Resources Rajala v. Law Firms Order.wpd*

pleadings rather than pleadings that lack detail and the decision whether to grant or deny such a motion is within the sound discretion of the court."[8]

Complaints to avoid fraudulent transfers also have a heightened pleading requirement under Federal Rule of Civil Procedure 9(b).[9] Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." In order to meet this heightened requirement, a plaintiff must allege the following for each transfer: (1) date of transfer; (2) amount of transfer (or if transfer was property rather than money, the property transferred and the value); (3) name of transferor; (4) name of initial transferee; and (5) consideration paid, if any, for the transfer.[10]

### B. The Trustee's Claim: § 550(a)

The Trustee's complaint states one claim under § 550(a). Section 550(a) states:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
>     (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>     (2) any immediate or mediate transferee of such initial transferee.

Under § 550(a), *if* a transfer has been avoided, a trustee can recover the value of the property transferred from the initial transferee or from "any immediate or mediate transferee of" the initial transferee. There is a safety net for those transferees, however. Under § 550(b)(1), a trustee

---

[8] *Id.*
[9] *Crescent Oil Co., Inc. v. Near (In re Crescent Oil Co., Inc.)*, No. 09-20258, Adv. No. 11-6076, 2011 WL 3878377 (Bankr. D. Kan. Aug. 31, 2011). Rule 9(b) is applicable to bankruptcy proceedings via Federal Rule of Bankruptcy Procedure 7009.
[10] *Spradlin v. Pryor Cashman LLP (In re Licking River Mining, LLC)*, 565 B.R. 794, 809 (Bankr. E.D. Ky. 2017).

*Gen Resources Rajala v. Law Firms Order.wpd*

cannot recover from other than the initial transferee if the immediate or mediate transferee of the initial transferee takes the transfer for value, in good faith, and without knowledge of the voidability of the transfer avoided.

In addition to the Trustee's claim under § 550(a), the Trustee also states, almost as an afterthought, that to the extent the judgment avoiding the transfer from GRHC to the Lookout holding company must be relitigated, the Trustee also seeks a judgment avoiding "that fraudulent transfer" pursuant to §§ 544 (avoidance action) and/or 548 (fraudulent transfers).

### C. Has the Trustee Satisfied the Federal Rules of Civil Procedure's Pleading Standards?

#### 1. Avoidable Transfer

The law firms complain that the Trustee's complaint does not state the necessary elements to establish an underlying avoidable transfer because it does not specifically allege anew an avoidable transfer under §§ 544–45, 547–49, 553(b), or 724(a), but instead relies on a prior consent judgment entered in separate litigation. The central issue in this case is whether the Trustee can rely on the judgment entered as a result of the settlement between the Trustee and the individual owners of the Lookout holding company in the district court litigation to satisfy the necessity of his pleading an avoided or avoidable transfer. Because remember, under § 550(a), *if* a transfer has been avoided, a trustee can recover the value of the property transferred.

The Trustee relies on *Tibble v. Farmers Grain Express, Inc. (In re Mich. Biodiesel, LLC)*,[11] for his argument that the law firms cannot collaterally attack the prior judgment and require the Trustee to litigate anew an avoidance action in the adversary proceedings against them. In *Tibble*, the court asked "whether subsequent transferees who were not named in the

---

[11] 510 B.R. 792 (Bankr. W.D. Mich. 2014).

- 13 -

*Gen Resources Rajala v. Law Firms Order.wpd*

Case 18-06016   Doc# 15   Filed 08/20/18   Page 13 of 19

judgment avoiding the initial transfer[] may require the trustee in a later § 550 recovery proceeding to reprove the avoidability of the transfer."[12] In other words, the *Tibble* court addressed the exact issue raised by the law firms. Must the Trustee specifically plead—and then prove—an avoidable transfer against them in this litigation?

In *Tibble*, the bankruptcy court granted summary judgment to the trustee of the bankruptcy estate against an LLC and avoided the transfer of funds from the estate to the LLC.[13] The trustee, about a year later, then filed a new adversary proceeding against subsequent transferees of that avoided transfer and moved for summary judgment "solely on the legal question of whether the court must allow the Defendants to re-litigate" the trustee's original § 549 avoidance action.[14] The bankruptcy court explored the "well established separation between avoidance and recovery" that the Sixth Circuit recognized and considered the statutory language of § 550 requiring an avoided transfer and then a separate recovery.[15] The bankruptcy court addressed the defendants' due process concerns for not permitting them to challenge the prior judgment avoiding the transfer to the LLC, but concluded that, regardless of whether a prior avoidance judgment was through default, consent, or trial, the court did not view the subsequent transferees as necessary parties to the avoidance litigation. Therefore, there were no due process concerns because § 550(b) provided subsequent transferees with the same defenses available to any bona fide purchaser.[16] Regarding fairness, the bankruptcy court concluded that the defendants would be assured of due process of law, and as a result, the court in *Tibble*

---

[12] *Id.* at 794.
[13] *Id.* at 795.
[14] *Id.*
[15] *Id.* at 795–96.
[16] *Id.* at 799–800.

*Gen Resources Rajala v. Law Firms Order.wpd*

determined "the estate's creditors should not have to bear the duplicate administrative expense" of proving "avoidance over and over again in each subsequent recovery proceeding."[17]

The holding of *Tibble* is admittedly attractive. It is logical and efficient to have a trustee prove voidability only one time, and § 550 does seem to indicate that avoidance and recovery are separate and distinct issues. But the facts underlying *Tibble* are different than the facts herein. The bankruptcy court in *Tibble* conducted a full summary judgment analysis of the underlying fraudulent transfer. Here, only a consent judgment was entered as the result of a settlement. *Tibble* also analyzed Federal Rule of Civil Procedure 16 (joinder of parties) and determined that the subsequent transferee defendants in the trustee's second action were not necessary parties to the fraudulent transfer action. No such effort has been undertaken by the parties here. And finally, some of the subsequent transferee defendants in *Tibble* were closely related insiders of the original LLC subject to the original fraudulent transfer suit, which may have colored the lens through which the court in *Tibble* viewed the due process concerns of the subsequent transferees. Those facts have not been proven at this stage of the current litigation.

In addition to the factual differences from those at hand, the holding in *Tibble* is also a minority position—and for good reason. In *Morris v. Emprise Bank (In re Jones Storage & Moving, Inc.)*,[18] a case decided closer to home by a Judge of this Court, the trustee of the debtor's bankruptcy estate attempted to rely on an agreed judgment in a prior adversary proceeding to establish the fraudulent transfer for a § 550 recovery against a transferee.[19] The bankruptcy court analyzed the argument as one of issue preclusion and held that because the

---

[17] *Id.* at 802.
[18] No. 00-14862, Adv. 04-5106, 2005 WL 2590385 (Bankr. D. Kan. May 7, 2004).
[19] *Id.* at *2.

*Gen Resources Rajala v. Law Firms Order.wpd*

transferee was not a party to the original adversary proceeding or in privity with the party to the prior action, it was not appropriate to apply issue preclusion.[20] As a policy matter, the bankruptcy court also noted:

> To hold that res judicata applies in this circumstance would deprive the [transferee] of its right to defend the claim against it and would open the door to substantial abuse. . . . [W]henever multiple parties are involved in a transaction voidable under the Code, the trustee could select one party, obtain a stipulated avoidance judgment against that party (perhaps with an agreement not to collect the judgment against the cooperating party), then seek to collect the balance from the other parties under section 550, irrespective of the defenses the parties might have had to the avoidance in the first place.[21]

Other courts have held similarly, concluding that principles of due process would be offended by holding a transferee bound by a fraudulent transfer judgment against a different entity.[22]

The Trustee believes that because he can rely on the prior avoided transfer, he need not plead anew an underlying statute for avoiding a transfer. Based upon the above analysis, this Court does not find that to be correct. But the Trustee's next arguments are more persuasive. The Trustee contends that even if he needs to plead a new avoidable transfer, it is not necessary to cite a specific statute because the facts control at this point, not legal issues, and that, regardless, his complaint does cite § 544 and § 548 in the alternate.

The Trustee's complaints do in fact state that if the judgment avoiding the transfer from GRHC to the holding companies must be relitigated, then the Trustee seeks a judgment avoiding that transfer under §§ 544 and 548. What more could the law firm defendants want at this point?

---

[20] *Id.* at *2–3.
[21] *Id.* at *4.
[22] *See, e.g.*, *Dye v. Commc'ns Ventures III, LP (In re Flashcom, Inc.)*, 503 B.R. 99, 114–15 (C.D. Cal. 2013) (discussing cases and holding that "it is clear that prohibiting defendants from raising and challenging the avoidability issue would constitute a violation of their due process rights" when the trustee attempted to impose liability on those defendants from a settlement including a stipulated judgment that a transfer was avoided).

*Gen Resources Rajala v. Law Firms Order.wpd*

The Trustee has cited the statutes he will rely upon if he is required to prove a fraudulent transfer; he details significant factual allegations giving the background of the Debtor's business, the creation of the holding companies, and the financial transactions of all parties involved, including the amounts of each transfer, the date of each transfer, each transferor, each transferee, and his allegations of intent with respect to those transactions. As a result, even Rule 8's heightened requirements for pleading fraud are satisfied. This Court has not been asked to determine whether those allegations state a claim for relief under Federal Rule of Civil Procedure 12(b)(6) or whether the Trustee will be entitled to a judgment on those allegations. The question the Court has been tasked with analyzing is whether the defendant law firms are entitled to a more definite statement under Rule 12(e). Based on what has been presented, the Court finds that they are not.

Rule 12(e) motions are disfavored and should "not be used as a substitute for the discovery and deposition procedures made available by the Federal Rules of Civil Procedure."[23] Rather than motions under Rule 12(e), the "primary burden of information exchange and issue delineation is to be borne through the utilization of the discovery process."[24] The parties have not begun that process in this case. As long as a complaint is "sufficiently definite to enable the Defendant to know what is charged," then a Rule 12(e) motion should not be granted, as the defendant has a reasonable opportunity to respond "knowing whether or not it did the things charged."[25] If a pleading is unintelligible, then a more definite statement may be needed,[26] but

---

[23] *Feldman v. Pioneer Petrol.*, 76 F.R.D. 83, 84 (W.D. Okla. 1977).
[24] *Bunker Exploration Co. v. Clarke (In re Bunker Exploration Co.)*, 42 B.R. 297, 301 (Bankr. W.D. Okla. 1984).
[25] *Feldman*, 76 F.R.D. at 84.
[26] *In re Bunker Exploration Co.*, 42 B.R. at 301.

- 17 -
*Gen Resources Rajala v. Law Firms Order.wpd*

that is not the case here. The Defendant law firms will be able to answer the allegations made against them. That is all that is required at this point.

## 2. Debtor's Transferred Interest

The law firms also argue that the Trustee fails to allege with particularity what interest in the Debtor's property was transferred. For example, they cite *Spradlin v. Pryor Cashman LLP (In re Licking River Mining, LLC)*,[27] for the language therein that "the rules of procedure require the pleader of a preferential or fraudulent transfer claim to reasonably identify the types of transfers sought to be avoided" and argue the trustee "must identify the set of facts upon which he seeks to recover."[28] But what the law firms don't address is that, at most, that court required only "the amount and date of the transfers together with the name of the transferor and transferee,"[29] and that information is clearly pleaded by the Trustee here. The Trustee alleges that GRHC transferred its development interest in the Lookout and Forward projects from GRHC to the applicable holding company. The Trustee then alleges the subsequent financial transactions of the holding companies receiving funds from Edison and how each law firm received a portion of that money. The law firms have all the detail they need to enable them to respond to the Trustee's complaint. Whether the GRHC development interest is sufficient to satisfy a fraudulent transfer claim is an entirely separate question from whether the Trustee has made allegations sufficient to satisfy Rule 12(e).

---

[27] 565 B.R. 794 (E.D. Ky. 2017).
[28] *Id.* at 803.
[29] *Id.*

- 18 -

*Gen Resources Rajala v. Law Firms Order.wpd*

Case 18-06016    Doc# 15    Filed 08/20/18    Page 18 of 19

### III. Conclusion

The Defendant law firms are trying to debate the legal merits of the Trustee's complaints against them. There will certainly be a time and place for measuring the strength of the Trustee's legal theories and whether the facts are sufficient to meet the Trustee's burdens of proof. But a motion for a more definite statement is neither the time nor place for such an exercise.

IT IS THEREFORE ORDERED that the motion for a more definite statement[30] filed by each Defendant law firm is denied.

IT IS FURTHER ORDERED that the Defendant law firms must serve their responsive pleadings to the Trustee's complaints within 14 days of this Court's Order, as required by Federal Rule of Civil Procedure 12(a)(4).

IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

---

[30] Adv. No. 18-6016, Doc. 9; Adv. No. 18-6020, Doc. 10.

*Gen Resources Rajala v. Law Firms Order.wpd*